**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Mikal J. White Mountain, | ) |
|                Petitioner, | )    **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Douglas Webber, Warden (S.D.), Wayne Stenehjem, Attorney General of North Dakota and Leann Bertsch, Director, North Dakota Department of Corrections and Rehabilitation, | ) ) ) ) )    Case No. 1:07-cv-091 |
|                Respondents. | ) |

Before the court is Respondent's Motion to Dismiss Petitioner Mikal J. White Mountain's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. The Honorable Daniel L. Hovland, Chief Judge of the District Court, has referred this matter to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that Respondents' motion be granted and the petition be dismissed.

**I.     BACKGROUND**

A criminal complaint was issued on August 23, 2004, charging White Mountain with two offenses: gross sexual imposition ("Count One") and tampering with evidence ("Count Two"). White Mountain made his initial appearance in state district court on August 23, 2004, and was appointed counsel on August 25, 2004. (Docket No. 11, Ex. 5).

Subsequently, an information was filed and White Mountain was arraigned and bound over for trial. (Docket No. 11, Ex. 5). The court convened a pretrial conference on November 11, 2004, after which it set the trial for December 28, 2004. In mid-December the State requested a


continuance on the grounds that a number of its witnesses would be unavailable if the trial proceeded as scheduled. (Docket No. 11, Ex. 6). The court denied the motion initially but, following a hearing on December 28, 2004, reversed its decision, granted the State's request, and rescheduled the trial for January 25, 2005. (Docket No. 11, Exs. 6-9). Additionally, it directed the State to file an amended information that identified White Mountain's victim as Jane Doe. (Docket No. 11, Exs. 3, 5, 9).

White Mountain was convicted on both counts. In April 2005 he was sentenced to ten years' imprisonment with five years suspended on Count One and to five years' imprisonment with all five years suspended on Count Two. (Docket No. 11, Exs. 1, 3, & 17). He filed a direct appeal with the North Dakota Supreme Court, asserting there was insufficient evidence to support his conviction and that the State did not adequately identify the victim in the amended information. (Docket No. 11, Exs. 5 & 18). The North Dakota Supreme Court summarily affirmed his conviction, concluding there was sufficient evidence to uphold the jury's verdict and that his objection to the amended criminal information could not be raised for the first time on appeal. State v. White Mountain, 2005 ND 209, 709 N.W.2d 21 (Table) (unpublished per curiam disposition).

On April 4, 2006, White Mountain filed an application for post-conviction relief in state court that contained ten separate claims of ineffective assistance of counsel. (Docket No. 11, Ex. 10). The district court conducted an evidentiary hearing, after which it denied the application. (Docket No. 11, Exs 12 & 13). Its decision was summarily affirmed on appeal by the North Dakota Supreme Court. See White Mountain v. State, 2007 ND 72, 734 N.W.2d 343 (Table) (unpublished per curiam disposition)

On December 6, 2007, White Mountain filed with this court a petition for habeas corpus relief that set forth the following four claims:

(1) Ineffective Assistance [of counsel] - failure to request a speedy trial.

(2) Ineffective Assistance [of counsel] - failure to object to court allowing naming of victim to be Jane Doe.

(3) Ineffective Assistance [of counsel] - failure to request a dismissal on December 28, 2005.

(4) Ineffective Assistance [of counsel] - failure to obtain DNA/toxicology report

(Docket No. 4)

On January 31, 2008, Respondents filed a Motion to Dismiss White Mountain's petition on the grounds that he had failed to exhaust three of his four claims in state court and, in any event, that all of his claims are without merit. (Docket No. 9). On March 28, 2008, White Mountain filed a response to Respondents' motion wherein he requested, inter alia, that the court "omit" his third claim. (Docket No. 20). On April 3, 2008, Respondents filed a reply to the White Mountain's response. (Docket No. 22). Also, in the interim, this court denied White Mountain's request for transfer and addressed the corresponding issue of this court's jurisdiction. (Docket Nos. 23 & 25).

All of the issues have now been briefed and the motion to dismiss is ripe for the court's consideration. As White Mountain abandoned his third claim, the court need only address the remaining three claims.

## II. GOVERNING LAW

### A. Scope of review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in violation of the United States Constitution or other

federal law. However, this review is limited because, as a matter of federalism and comity, primary responsibility for ensuring compliance with federal law in state-court criminal proceedings rests with the state courts. Consequently, federal-court intervention is limited under § 2254(d) to the instances in which a person is being held in custody pursuant to a state-court decision that (1) is directly contrary to established federal law as enunciated by the United States Supreme Court, (2) is an objectively unreasonable application of Supreme Court precedent, or (3) is based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See generally Woodford v. Visciotti, 537 U.S. 19, 26-27 (2002) (per curiam); Williams v. Taylor, 529 U.S. 362, 399-413 (2000); Williams v. Taylor, 529 U.S. 420, 436-437 (2000).[1]

Also, in keeping with the policy of state courts having primary responsibility for enforcement of federal rights in state-court proceedings, § 2254 contains a number of additional rules and procedures for ensuring that state-court convictions are given the maximum effect as allowed by law and to limit federal-court "retrials" of state-court criminal proceedings under the guise of federal habeas corpus. See Bell v. Cone, 535 U.S. 685, 693 (2003). For example, under § 2254(b), a federal court may only consider habeas claims that have been first properly presented to the state

---

[1] The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning and has described the differences as follows:
> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. Id., at 405-406, 120 S.Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. Id., at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one. Id., at 409-410, 120 S.Ct. 1495. See also id., at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694; see also Early v. Packer, 537 U.S. 3, 7-11 (2002) (per curiam) (distinguishing between the application of the "contrary to" and "unreasonable application" clauses).

courts and exhausted using available state-law procedures.  E.g., Rhines v. Weber, 544 U.S. 269, 273-275 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001).[2]  And, in most cases, claims that have been procedurally defaulted at the state level are not subject to review in federal court.[3]

Petitioners are also required in most cases to develop the factual bases for their federal claims in the state-court proceedings.  A federal evidentiary hearing will not be available to develop the necessary facts unless a petitioner's claims rely upon a new, retroactive law or the petitioner could not have previously discovered the facts by the exercise of due diligence.  28 U.S.C. § 2254(e)(2).

---

[2] In Dixon v. Dormire, the Eighth Circuit summarized the exhaustion requirement as follows:
It is well established that the exhaustion doctrine, now codified, precludes the issuance of a writ of habeas corpus to a state prisoner on a claim for which that prisoner has not "exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A), (c) (1994 & Supp. IV 1998). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). While the exhaustion doctrine does not require a petitioner to file repetitive petitions in state court or to invoke "extraordinary remedies" outside the standard review process where relief has not been provided in the past, it does require a state prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan, 526 U.S. at 844-45, 119 S.Ct. 1728. The Supreme Court has clarified that in order to invoke "one complete round" of available state court remedies prior to filing for federal habeas corpus relief, a state prisoner must seek the discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state. Id. at 845, 847, 119 S.Ct. 1728.
263 F.3d at 777.  A claim is properly presented if the petitioner refers to the particular federal constitutional right or cites to a state or federal case that raises the pertinent constitutional issue.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005).

[3] The Eighth Circuit has set forth the governing rule and the relevant exceptions as follows:
A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002). A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court, unless the prisoner can show cause and prejudice for the default, or actual innocence. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards. Murray v. Carrier, 477 U.S. 478, 493-96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).
Clemons v. Luebbers 381 F.3d 744, 750 (8th Cir. 2004).

Finally, state-court factual findings carry a presumption of correctness that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

    **B.    Ineffective assistance of counsel**

Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant who asserts ineffectiveness of counsel must ordinarily demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant.[4] The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374, 380; Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005). In making this determination, a state or federal court must:

> ". . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689, 104 S.Ct. at 2065.

Nave v. Delo, 62 F.3d 1024, 1035 ( 8th Cir. 1995). When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and does not amount to ineffective assistance. Bell v. Cone, 535 U.S. 685 at 698; Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003). Likewise, the same holds true in judging trial counsel's performance with respect to claims of inadequate investigation. Rompilla v. Beard, 545 U.S. at 381 ("In judging the defense's investigation . . . hindsight is discounted by pegging adequacy to 'counsel's perspective at the time'

---

[4] There are three situations in which a Sixth Amendment violation may be presumed without consideration of the "performance" and "prejudice" components of Strickland: (1) when the accused is actually or constructively denied counsel during a critical stage of the criminal proceeding, (2) when counsel fails to subject the government's case to a meaningful adversarial testing, which failure must be complete and not limited to isolated portions of the proceeding, or (3) when circumstances are present that even competent counsel could not render effective assistance. E.g., Bell v. Cone, 535 U.S. at 695-697; United States v. White, 341 F.3d 673, 677-679 (8th Cir. 2003).

investigative decisions are made . . . and by giving a 'heavy measure of deference to counsel's judgments.'") (quoting Strickland , 466 U.S. at 689 & 691).

Under the "second Strickland prong," prejudice is only shown when "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." E.g., Woodford v. Visciotti, 537 U.S. at 22 (quoting Strickland, 466 U.S. at 694 and adding emphasis); Perry v. Kemna, 356 F.3d 880, 888 (8th Cir. 2004). "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Woodford v. Visciotti, 537 U.S. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland tests, the federal courts must accord the state court's determination the deference required by 28 U.S.C. § 2254(d). Rompilla v. Beard, 545 U.S. at 380. Assuming no issue with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of the case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. at 25; see also Rompilla v. Beard, 545 U.S. at 380.

Finally, when a defendant raises multiple claims of ineffective assistance, each claim must be examined independently. Hall v. Luebbers, 296 F.3d 385, 392-93 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-04 (8th Cir. 1994).

### III.   DISCUSSION

#### A.   Claim No. 1:  Ineffective assistance in failing to request a speedy trial

The gist of White Mountain's speedy-trial claim is that his trial counsel failed to heed his instructions to file a speedy-trial request. He claims that, if trial counsel had filed a speedy-trial

7

request, the court would not have continued the trial with the result being the likely dismissal of one or both counts because of the inability of the State to secure the attendance of the necessary witnesses, including the victim.

White Mountain testified at his postconviction hearing that he instructed defense counsel upon her appointment to file a motion for a speedy trial. (Docket No. 11, Ex. 12 at pp. 5-7, 10-12). His trial counsel, however, testified that she did not recall this and that her first recollection of any expression of a desire for a speedy trial by White Mountain was during the hearing held on December 28, 2004, with respect to the State's motion for a continuance when it was clear that the State might have problems if the trial was not continued. (Docket No. 11, Ex. 12 at pp. 18-22).

In ruling upon this claim of ineffective assistance, the state court concluded that White Mountain's testimony, that he had requested his attorney at the beginning of her representation to make a demand for speedy trial, was not credible. (Docket No. 11, Ex. 13, p. 3). A state court's findings of fact "are presumed to be correct absent 'clear and convincing evidence' to the contrary." Perry v. Kemna, 356 F.3d 880, 883 (8th Cir. 2004) (citing 28 U.S.C.§ 2254(e)(1)). In this case, White Mountain has not presented sufficient evidence to overcome this presumption of correctness.

Accepting then the finding that White Mountain did not initially instruct his attorney to demand a speedy trial, the decision of whether to invoke the statutory right to a speedy trial was clearly a matter of trial strategy, cf. Bowman v. Gammon, 85 F.3d, 1339, 1345 (8th Cir. 1996), which, as previously noted, gives rise to a strong presumption that trial counsel's strategic decisions are sound and not ineffective assistance. And, here, White Mountain was already incarcerated at the North Dakota State Penitentiary on other charges, so this was not a case where he was being deprived of his liberty by being held in custody pending trial on charged offenses for which there

8

had been no conviction. Further, there is no evidence that his counsel was aware at the beginning of the case that the State might run into witness problems at the time of the originally scheduled trial. Finally, in many cases, delay can work to the advantage of a criminal defendant. Given this and the dearth of evidence presented by White Mountain, the strong presumption that his counsel's strategic choices with respect to the exercise of the state statutory right to a speedy trial were not ineffective has not been overcome by White Mountain.

Finally, even if White Mountain's counsel was ineffective in failing to initially make a speedy-trial demand, White Mountain has failed to demonstrate that he has been prejudiced. His suggestion that a timely speedy-trial request would have resulted in the denial of the State's request for a continuance is utter speculation. The state court in its postconviction memorandum opinion correctly observed that good cause existed under state law for its granting of the short continuance of the trial.[5] The interests of justice clearly favored granting the continuance. Finally, the state court was not constrained by any constitutional right to a speedy trial given, particularly given that the delay was minimal and White Mountain was already serving time as a result of an earlier conviction. Cf. Underdahl v. Carlson, 462 F.3d 796, 799 (8th Cir. 2006); Palmer v. Clarke, 408 F.3d 423, 434 (8th Cir. 2005); Robinson v. Leapley, 26 F.3d 826, 831-832 (8th Cir. 1994).

---

[5] N.D.C.C. § 29-19-02 provides the following statutory right to a speedy trial:
In a criminal prosecution, the state and the defendant each shall have a right to a speedy trial. The right to a speedy trial in a criminal case . . . is for the trial to begin within ninety days of the date the party elects this right. The prosecution and the defendant shall elect this right within fourteen days following the arraignment. The court may allow the trial to begin later than ninety days of the arraignment for good cause.

In this case, White Mountain's initial trial date fell within ninety days of his arraignment, which was held on October 4, 2004. The state court later concluded, however, that the unavailability of a critical State witnesses warranted the granting of a short extension over the objections of White Mountain and his counsel, which resulted in a trial within 112 days of the arraignment.

9

In summary, White Mountain has not demonstrated that the state court applied <u>Strickland</u> in an objectively unreasonable manner to the facts of his claim of ineffectiveness with respect to an alleged failure to timely invoke his statutory speedy-trial rights. Consequently, Claim No. 1 fails on the merits.

      **B.**      **Claim No. 2: Ineffective assistance in failing to object to the court allowing the victim to be identified as "Jane Doe"**

White Mountain next contends in his petition that defense counsel was ineffective because she failed to object to the state court's decision to identify the victim at trial as Jane Doe. In subsequent filings with this court, he has also charged the State with withholding the identity of his victim from him prior to trial.

The Respondents aver that White Mountain has failed to exhaust this claim. Additionally, they contend that this claim can be dismissed on the merits notwithstanding the failure to exhaust. They point out that, contrary to White Mountain's assertions, defense counsel objected to the use of the name Jane Doe prior to trial. Also, they dismiss the notion that the victim's identity was withheld from White Mountain, stressing that the victim's identity was disclosed during discovery, that the parties openly discussed the victim and her whereabouts during pretrial conferences and hearings, and that the victim was identified by name in the proposed jury instructions and the State's witness list.

Turning to the merits, the record establishes that defense counsel objected to use of the appellation Jane Doe and requested that the victim be identified by name. (Docket No. 11, Ex. 17, pp. 4-7). This fact alone negates any suggestion by White Mountain that defense counsel's performance was objectively unreasonable. Second, White Mountain was not demonstrably prejudiced by the manner in which the victim was identified at trial. Put another way, there is

nothing to show that there would have been a different outcome at trial had the victim been identified by name as she testified at trial was subjected to rigorous cross examination.

Finally, White Mountain's assertion that he was never apprised of his victim's identity prior to trial is equally without merit. The state record clearly indicates that both White Mountain and his counsel were aware of the identify of the victim prior to trial. (Docket No. 11 at Ex. 8, p. 2; Ex. 9, p. 4; Ex. 12, pp. 13-14, 23-24, 31-32). And, at trial, the victim was identified in the jury instructions. (Docket No. 11, Ex. 17, pp. 4-7).

Claim No. 2 fails on the merits.

### C.    Claim No. 4: Failure to obtain DNA/toxicology results

White Mountain next contends that his trial counsel was ineffective for failing to obtain "DNA" that he claims would "prove that the accuser was not as intoxicated as she said she was had a full toxicology test been done." (Docket No. 4, p. 10). It is clear from this, his testimony during the postconviction hearing (Docket No. 11, Ex. 12, pp. 13-14), and from his response to the Respondent's motion to dismiss (Docket No. 18) that White Mountain has confused DNA evidence with toxicology evidence, which, if it existed, might possibly have been relevant to the victim's state of intoxication at the time of the commission of the offense.

Turning to the merits, White Mountain has failed to prove that his counsel was ineffective in not obtaining toxicology evidence of the victim, much less that the state court's application of Strickland was objectively unreasonable. More particularly, White Mountain failed to develop any record regarding what test results were available from the victim, if any, much less the probative value of such evidence. Obviously, White Mountain's bald assertion during his postconviction testimony that a full toxicology test would have shown that the victim was capable of giving consent

11

is not enough, particularly given that White Mountain acknowledged the victim had passed out at one point during his postconviction testimony (Docket No. 11, Ex. 12, p. 13) and the overwhelming evidence presented at trial that the victim had consumed a substantial amount of alcohol and was passed out on a couch when White Mountain engaged in a sexual act with her.  (Docket No. 11, Ex. 17, pp. 25, 26, 30, 42, 54, 58, 72-75, 81).

White Mountain requests that he be afforded an opportunity for an evidentiary hearing in this court to make the necessary record.  However, as previously noted, White Mountain is required to make his record at the state-court level absent exceptional circumstances, which are not present here.[6]

For all of these reasons, Claim No. 4 should be denied on the merits.

## IV.     CONCLUSION

The undersigned **RECOMMENDS** that:

1.      The Respondent's Motion to Dismiss (Docket No. 9) be **GRANTED**;

2.      White Mountain's  Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Docket No. 4) be **DENIED**;

3.      The court certify that an appeal from the denial of this action may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith;

---

[6] Moreover, even if the court was to hold a hearing, there is likely little to be gained given that the probative value of any after-the-fact blood alcohol evidence is likely to be minimal in terms of attempting to prove whether she was conscious or unconscious at the time of the commission of the offense.  As noted above, the overwhelming evidence was that the victim had consumed substantial amounts of alcohol and had passed out at some point.  Under these circumstances use of blood alcohol evidence to prove that the victim would likely have been conscious at the particular point at which the offense occurred sufficient to have to given consent would amount to nothing more than speculation given the number of variables involved including any uncertainties as to the exact time of the commission of the offense, the length of time between the commission of the offense and the blood alcohol test, the victim's capacity for consumption, etc.

4.      A certificate of appealability not be issued with respect to any of the issues raised by White Mountain.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.

Dated this 25th day of July, 2008.


*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court